UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v. Case No: 6:25-cr-348-JSS-DCI-1

ENDRY GUZMAN ALVINO,

Defendant.
___________________________________/

**ORDER**

This case is set for a jury trial starting August 4, 2026. (Dkt. 59 at 1.) Invoking Federal Rules of Evidence 401, 402, 403, 404(b), 801, 802, and 901, as well as the Fifth and Sixth Amendments to the United States Constitution, the Defendant, Endry Guzman Alvino, moves in limine to exclude six categories of evidence and argument from the trial. (*See* Dkt. 60.) Namely, the Defendant seeks to exclude (1) five uncharged prior shipments under Rules 401, 402, 403, and 404(b), (2) a photographic lineup identification under the Fifth Amendment's Due Process Clause, (3) foreign law enforcement reports and records under the Sixth Amendment's Confrontation Clause and Rules 801 and 802, (4) the decision of the United States Citizenship and Immigration Services (USCIS) to deny the Defendant's naturalization application, immigration-consequence evidence, and reference to the Defendant's place of birth under Rules 401, 402, and 403, (5) photographs, videos, and testimony about the charged firearms, magazines, and ammunition under Rule 901, and (6) use of the

terms "Operation Ghost Guns," "Operation Swaying Palm," "ghost guns," "trafficker," "arsenal," and "pipeline" under Rules 401, 402, and 403. (*See* Dkt. 60.) The Government does not intend to introduce the third and fourth categories of evidence except for the Defendant's place of birth and does not intend to use the terms "Operation Ghost Guns" and "Operation Swaying Palm" included in the sixth category but otherwise opposes the motion. (*See* Dkt. 61.) Upon consideration, for the reasons outlined below, the court grants the motion in part and denies it in part.

**BACKGROUND**

The superseding indictment filed against the Defendant in May 2026 contains four counts. (*See* Dkt. 53.) Counts one and two each charge the Defendant with making a false statement during the purchase of a firearm, in violation of 18 U.S.C. § 924(a)(1)(A). (Dkt. 53 at 1–2.) He purportedly made a false statement or representation to Cash America Pawn of Orlando on two occasions. (*Id.*) Count one references a June 17, 2023 occasion while count two references a September 14, 2023 occasion. (*Id.*) Allegedly, on each occasion, the Defendant

> execute[d] a Department of Justice, Bureau of Alcohol, Tobacco, Firearms, and Explosives [(ATF)] Form 4473, Firearms Transaction Record, to the effect that he was a [c]itizen and [n]ational of the United States and that he was the "actual transferee / buyer of all the firearm(s) listed," whereas in truth and in fact, [he] was not a [c]itizen and [n]ational of the United State[s] and . . . was buying the firearm on behalf of someone else.

(*Id.*) Count three charges the Defendant with smuggling goods from the United States, in violation of 18 U.S.C. § 554(a). (Dkt. 53 at 2–3.) The count alleges the September 15, 2023 smuggling of a firearm, firearm part, or ammunition from the United States

to the Dominican Republic. (*Id.*) Count four charges the Defendant with making a false statement related to naturalization, in violation of 18 U.S.C. § 1015(a). (Dkt. 53 at 3.) The count asserts that during a February 11, 2026 naturalization proceeding, the Defendant

> falsely stated [that] he had never claimed to be a U[nited] S[tates] [c]itizen, that he had never sold, given, or provided weapons to any person or helped another person sell, give, or provide weapons to any person, and that he had not committed any crime or offense for which he had not been arrested.

(*Id.*) The superseding indictment also includes forfeiture allegations concerning firearms related to counts one through three. (*Id.* at 3–5.)

In his motion, the Defendant states:

> The charged conduct relates to a single shipment via Palmera Cargo Express, Orlando, Florida, dated September 15, 2023 (Invoice PALM-11325), containing a refrigerator that was seized by Dominican Republic . . . customs officials at the Port of Haina on October 3, 2023, and found to contain fourteen Glock pistols, twenty-eight magazines, and 444 rounds of ammunition. The remaining charged conduct relates to [the Defendant's] application for naturalization, in which the [Defendant] answered in the negative that he never held himself out to be [a United States citizen], in writing or other form, which contradicts the ATF 4473 form, in which it is marked that he is a United States citizen.

(Dkt. 60 at 2; *see* Dkt. 61 at 2 ("[C]ustoms officials located fourteen firearms, twenty-eight magazines, and more than 400 rounds of 9mm ammunition concealed within the refrigerator's paneling.").) In its response, the Government reports: "The removal of the firearms [from the refrigerator] was videotaped, and the firearms were individually photographed." (Dkt. 61 at 2.)

According to the Government, this case arises from an investigation by

Homeland Security Investigations (HSI) into the illegal exportation of firearms to the Dominican Republic. (*Id.* at 1.) The Government identifies Yessen Vasquez-Tolentino as a cooperating witness. (*Id.* at 3, 5.) The Government indicates that on October 4, 2023, HSI seized a refrigerator that Vasquez-Tolentino had attempted to ship to the Dominican Republic, that the refrigerator contained firearms and ammunition, that the Government charged Vasquez-Tolentino in connection with the attempted shipment, and that he "pleaded guilty and agreed to cooperate with the [G]overnment." (*Id.*) Reportedly, through this cooperation, Vasquez-Tolentino informed the Government about the Defendant's involvement with the shipment:

> Vasquez-Tolentino disclosed that he and the [D]efendant, [with whom] he played softball . . . , had discussed sending firearms and parts to the Dominican Republic towards the end of 2022. Since that time, Vasquez-Tolentino had shipped refrigerators with firearms inside twice. On both occasions, the [D]efendant had supplied Vasquez-Tolentino with firearms to package inside the refrigerators. Moreover, the [D]efendant had taught Vasquez-Tolentino how to package and conceal the firearms inside refrigerator paneling using glue and expansion foam.

(*Id.* at 5.)

As to the prior shipments constituting the first category of evidence that the Defendant challenges, the Government argues that the Defendant's "shipments in October 2022, April 2023, June 2023, and earlier on June 17 and June 29 are what led HSI agents to understand the significance of the September 2023 shipment and were essential to identifying the [D]efendant as the source of the smuggled firearms." (*Id.* at 8.) The Defendant describes the dates of the prior shipments slightly differently: "approximately January 2023," "approximately May 2023," "approximately June

2023," "June 17, 2023," and "June 29, 2023." (Dkt. 60 at 3.) The Defendant identifies the Palmera Cargo Express invoice numbers associated with the shipments as PALM-8288, PALM-9949, PALM-10439, PALM 10543, and PALM-10651. (*Id.*)

As to the photographic lineup identification comprising the second category of challenged evidence, the Defendant represents that on October 4, 2023, HSI Special Agent Robert Palfrey showed a six-photograph lineup to a Palmera Cargo Express employee, who then immediately identified the Defendant's photograph. (*Id.* at 8.) The Defendant challenges this evidence because the discovery produced by the Government lacks "written instructions given to the witness before the lineup," "documentation of whether the administering agent was blind to the suspect's identity," and "any contemporaneous record of the witness's confidence level." (*Id.*) Accordingly, the Defendant posits that the procedures used to acquire the identification were unduly suggestive. (*Id.* at 9–10.) The Government responds:

> As the [Government] expects the [employee] will testify at trial, the [employee] knew the [D]efendant and was familiar with him by name and by sight because [the Defendant] was a repeat customer. As the [Government] expects the interviewing HSI agents will testify at trial, an HSI analyst created a photographic lineup or photo[graphic] array of six driver['s] license photo[graph]s of six Hispanic or darker-skinned individuals, including the [D]efendant, and the HSI agents presented the photo[graphic] array to the [employee]. The [employee] selected the [D]efendant's photograph from the array immediately and without hesitation.

(Dkt. 61 at 2–3.)

## APPLICABLE STANDARDS

"A motion in limine presents a pretrial issue of admissibility of evidence that is

likely to arise at trial, and as such, the order, like any other interlocutory order, remains subject to reconsideration by the court throughout the trial." *United States v. Quiles-Davila*, No. 6:24-cr-233-JSS-DCI-1, 2025 WL 1346258, at *1, 2025 U.S. Dist. LEXIS 87674, at *3 (M.D. Fla. May 8, 2025) (quotation omitted). "The real purpose of a motion in limine is to give the trial judge notice of the movant's position so as to avoid the introduction of damaging evidence which may irretrievably affect the fairness of the trial." *Id.* (alteration adopted and quotation omitted). "The district court has broad discretion to determine the admissibility of evidence, and [the appellate court] will not disturb the [district] court's judgment absent a clear abuse of discretion." *United States v. McLean*, 138 F.3d 1398, 1403 (11th Cir. 1998); *see also United States v. Jernigan*, 341 F.3d 1273, 1285 (11th Cir. 2003) ("Inherent in this standard is the firm recognition that there are difficult evidentiary rulings that turn on matters uniquely within the purview of the district court, which has first[]hand access to documentary evidence and is physically proximate to testifying witnesses and the jury.").

## ANALYSIS

The court begins with the Defendant's requests to exclude the third, fourth, and sixth categories of evidence, each of which is partially unopposed by the Government. (*See* Dkt. 61.) The court then addresses the first, second, and fifth categories in turn.

### A. The Third, Fourth, and Sixth Categories

Regarding the third category, the Government represents that it "does not expect to introduce foreign law enforcement reports as exhibits at trial, although it may

use reports to refresh witnesses' recollection as necessary and permitted under the Federal Rules of Evidence." (*Id.* at 14.) Based on this representation, the court grants the Defendant's motion to exclude the foreign law enforcement reports and records but permits the Government to use the reports to refresh witnesses' recollection. *See United States v. Draine*, No. CR 06-4097-MWB, 2007 WL 2433911, at *10, 2007 U.S. Dist. LEXIS 62334, at *27 (N.D. Iowa Aug. 22, 2007) ("The motion is granted to the extent that the [G]overnment represents that it will not offer challenged evidence[.]").

Regarding the fourth category, related to the USCIS's denial of the Defendant's naturalization application, the Government "does not oppose this portion of the [D]efendant's motion," except that the Government opposes the exclusion of any reference to the Defendant's place of birth. (Dkt. 61 at 14–15.) The motion in limine seeks this exclusion in a single, unsupported sentence and, accordingly, does not explain why Rules 401, 402, and 403—or any other law—justifies prohibiting the Government from referring to the Defendant's place of birth. (*See* Dkt. 60 at 16.) This particular request is thus unpersuasive. *See United States v. Markovich*, 95 F.4th 1367, 1379 (11th Cir. 2024) (rejecting an argument when the criminal defendant who advanced it "cite[d] no legal authority to support it"); *see also United States v. Holley*, 166 F.4th 139, 151 (11th Cir. 2026) (requiring arguments "to be raised *and developed*"). As the Government asserts, this information is relevant to the charges that the Defendant knowingly made false statements when he claimed to be a United States citizen and national, and the Defendant has not established that the prejudice potentially generated by the information substantially outweighs its probative value.

(Dkt. 61 at 14–15.) *See United States v. Graham*, 123 F.4th 1197, 1266 (11th Cir. 2024) ("[T]he standard for what constitutes relevant evidence is a low one[.]" (quotation omitted)); *United States v. Valdez-Araiza*, No. CR-16-01057-001-TUC-JGZ (LCK), 2017 WL 11456473, at *2, 2017 U.S. Dist. LEXIS 225238, at *7 (D. Ariz. Mar. 24, 2017) (examining "the issue of whether or not [the d]efendant was in fact a United States citizen at the time she applied for a [U]nited S]tates passport" and explaining that "[b]ecause the Government must prove as an essential element of the charged crime that [the d]efendant's statements were false, . . . testimony on the subject of . . . citizenship [wa]s relevant"); *see also United States v. Holley*, 166 F.4th 139, 149 (11th Cir. 2026) ("Rule 403 is an extraordinary remedy, which should be used only sparingly, and the balance should be struck in favor of admissibility." (quotations omitted)). Consequently, the court excludes the USCIS's denial decision and immigration-consequence evidence but allows the Government to reference the Defendant's place of birth.

Regarding the sixth category—use of the terms "Operation Ghost Guns," "Operation Swaying Palm," "ghost guns," "trafficker," "arsenal," and "pipeline"—the Government "does not oppose the [D]efendant's request" as to "Operation Ghost Guns" and "Operation Swaying Palm" and generally "agrees that inflammatory language should not be used at trial." (Dkt. 61 at 16–17.) *See United States v. Tisdale*, 817 F.2d 1552, 1556 (11th Cir. 1987) ("A prosecutor may not make an appeal to the jury that is directed to passion or prejudice rather than to an understanding of the facts and of the law." (quotations omitted)). However, the Government does not consider

the terms "trafficker," "arsenal," and "pipeline" to fit that description. (Dkt. 61 at 17.) The Government argues: "To the extent [that] the [c]ourt has concerns about the potential for substantially prejudicial inflammatory language, the [c]ourt should address it in context at trial rather than through a blanket and speculative prohibition on the words witnesses may use when testifying." (*Id.*) Upon consideration, the court excludes use of the terms "Operation Ghost Guns," "Operation Swaying Palm," and "ghost guns," advises the parties to avoid inflammatory language (for example, the word "alien" in the immigration context and the use of the word "illegal" as a noun),[1] and declines to exclude "trafficker," "arsenal," and "pipeline" out of the context of the trial. During the trial, the Defendant may make specific objections concerning the word "trafficker," "arsenal," or "pipeline" as appropriate. *See United States v. Dorvilus*, 357 F. App'x 239, 246–47 (11th Cir. 2009) ("Trial judges are not required to decide evidentiary issues in hypothetical terms, because 'probativeness and prejudice' are 'fact- and context-intensive inquiries that can only be competently made by the district court upon assessing first[]hand the evidence presented by both parties.'" (quoting *Jernigan*, 341 F.3d at 1287)). The court notes that to promote courtroom decorum, the Local Rules require lawyers and pro se parties to "refrain from any display of animosity"—including through language—"toward anyone in the courtroom,

---

[1] *See Williams v. Garland*, 59 F.4th 620, 624 n.1 (4th Cir. 2022) (noting in the immigration context that the word "alien," in and of itself, "has been recognized as an archaic and dehumanizing term" (quotation omitted)); *United States v. Rodriguez-Soto*, No. 4:22-CR-0018-SEG-WEJ, 2022 WL 17547579, at *2 n.3, 2022 U.S. Dist. LEXIS 221951, at *6 n.3 (N.D. Ga. Dec. 9, 2022) (expressing a preference against the use of the word "alien"—a "pejorative term" in the immigration context).

including a lawyer, litigant, or witness," when in court. M.D. Fla. R. 5.03(c)(8).

**B. The First Category**

As to the first category of challenged evidence, the Defendant maintains that any information about the five uncharged prior shipments should be excluded as irrelevant, unnecessary to satisfy the elements of the charged offenses, only capable of serving an impermissible, propensity-related purpose, unfairly prejudicial, and lacking in probative value. (Dkt. 60 at 3–8.) Although the Defendant contends that the evidence is "not curable by instruction," he requests a limiting instruction in the alternative to exclusion. (*Id.* at 7–8.) The Government responds that the evidence is relevant to establishing the Defendant's identity, knowledge, absence of mistake, and motive, bears on elements that the Government must prove, is intrinsic and thus not subject to Rule 404(b)'s propensity analysis, serves non-propensity-related purposes in any event, and has substantial probative value compared to the risk of unfair prejudice. (Dkt. 61 at 6–12.) The Government also observes that the court can mitigate potential prejudice by issuing a limiting instruction. (*Id.* at 11–12.)

The Federal Rules of Evidence respecting relevance provide that "evidence is not admissible," Fed. R. Evid. 402, unless the evidence "has [a] tendency to make a fact more or less probable than" the fact would otherwise be and "the fact is of consequence in determining the action," Fed. R. Evid. 401. Even if evidence is relevant, it may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative

evidence." Fed. R. Evid. 403. These rules "create[] a strong presumption in favor of admissibility." *United States v. Cenephat*, 115 F.4th 1359, 1365 (11th Cir. 2024) (quotation omitted). Further, "Rule 403 imposes no requirement that the [G]overnment choose the least prejudicial method of proving its case." *Id.* (quotation omitted); *see United States v. Betancourt*, 734 F.2d 750, 757 (11th Cir. 1984) ("In criminal trials[,] relevant evidence is inherently prejudicial."). Limiting instructions may alleviate prejudice. *See United States v. Edouard*, 485 F.3d 1324, 1346 (11th Cir. 2007) ("[A]ny unfair prejudice possibly caused by admitting evidence of [the defendant]'s prior smuggling activities was mitigated by the district court's limiting instruction to the jury.").

Rule 404(b) supplies an additional constraint on evidence by prohibiting a party from using "[e]vidence of any other crime, wrong, or act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, the rule permits a party to use such evidence "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). In this criminal case, the rule also requires the Government to "provide reasonable notice of any such evidence that [it] intends to offer at trial, so that the [D]efendant has a fair opportunity to meet" the evidence, and to "articulate in the notice the permitted purpose for which the [Government] intends to offer the evidence and the reasoning that supports the purpose." Fed. R. Evid. 404(b)(3)(A)–(B). Evidence that is "not part of the crime charged" is not subject to Rule 404(b)

when the evidence is intrinsic, meaning that it "pertain[s] to the chain of events explaining the context, motive[,] and set[]up of the crime." *United States v. Williford*, 764 F.2d 1493, 1499 (11th Cir. 1985) ("[Such evidence] is properly admitted if [it is] linked in time and circumstances with the charged crime, or [it] forms an integral and natural part of an account of the crime, or [it] is necessary to complete the story of the crime for the jury."). In deciding whether to exclude evidence under Rule 404(b), courts consider whether the challenged evidence is relevant to an issue besides the defendant's character, whether a Rule 403 risk—for example, unfair prejudice or jury confusion—substantially outweighs the evidence's probative value, and whether sufficient proof will be presented to the jurors to allow them to find that the defendant committed the other crime, wrong, or act. *See United States v. Levinson*, 504 F. App'x 824, 827 (11th Cir. 2013). With regard to the Rule 403 inquiry, the "[s]imilarity between [an] earlier crime and the charged conduct will make the earlier offense 'highly probative with regard to [the] defendant's intent in the charged offense.'" *United States v. Cooper*, 433 F. App'x 875, 877 (11th Cir. 2011) (quoting *United States v. Ramirez*, 426 F.3d 1344, 1354 (11th Cir. 2005)).

To the extent that the Defendant seeks the wholesale exclusion before trial of any evidence of uncharged prior shipments under Rules 401, 402, 403, and 404(b), the request is denied. During the trial, the Defendant may make specific evidentiary objections as they become appropriate, and the parties may jointly propose suitable limiting instructions for the court's consideration. *See Edouard*, 485 F.3d at 1346. The court generally agrees with the Government that evidence of the uncharged prior

shipments is relevant, holds a probative value not substantially outweighed by the risk of unfair prejudice, and is intrinsic to the charged offenses such that Rule 404(b) does not apply. On the latter point, the Government explains:

> The[] shipments form part of the same series of transactions because they reflect the [D]efendant's consistent use of the same concealment method, the same shipping route, the same freight company, and the same modus operandi later uncovered in the charged refrigerator. . . . [T]he evidence is necessary to complete the story of the crime. . . . [For example, the Palmera Cargo Express employee] was able to identify the [D]efendant precisely because he already knew the [D]efendant as a longstanding customer. Without this context, the jury would be left with an incomplete narrative that falsely suggests that law enforcement focused on the [D]efendant without foundation. . . . [And] the evidence is inextricably intertwined with the charged conduct. . . . The prior shipments . . . directly explain how the [D]efendant acquired the skill and method used for the charged shipment.

(Dkt. 61 at 7–9.) According to the Government, evidence supports that Vasquez-Tolentino taught the Defendant "the specific concealment method—removing door paneling, inserting firearms, and resealing the panel with glue and foam"—that "the Dominican Republic authorities observed when they pried open the refrigerator shipped by the [D]efendant." (*Id.* at 8–9.) Because evidence of the uncharged prior shipments therefore "pertain[s] to the chain of events explaining the context, motive[,] and set[]up of" the charged crimes, it is not subject to Rule 404(b). *See Williford*, 764 F.2d at 1499; *see also United States v. Ford*, 784 F.3d 1386, 1394 (11th Cir. 2015) ("[The Eleventh] Circuit repeatedly has held that evidence of uncharged conduct that is part of the same scheme or series of transactions and uses the same modus operandi as the charged offenses is admissible as intrinsic evidence outside the scope of Rule 404(b)."). In any event, the evidence would pass the Rule 404(b) test. *See Levinson*, 504 F. App'x

at 827; *cf. United States v. Dominguez*, 661 F.3d 1051, 1073 (11th Cir. 2011) (discerning no abuse of discretion when the district court admitted Rule 404(b) evidence of the defendant's involvement in a smuggling that occurred eight months prior to the charged smuggling because the evidence went to the defendant's intent). That said, the possibility remains that the Government does not need to introduce evidence of all five prior shipments to make its case against the Defendant. The Government should focus on proving the charges in the superseding indictment. *See United States v. Grullon Nolasco*, No. 6:25-cr-343-JSS-NWH-1, 2026 WL 795630, at *5, 2026 U.S. Dist. LEXIS 59927, at *17 (M.D. Fla. Mar. 23, 2026) ("[T]he Government shall focus on proving the charged crimes and shall avoid unfairly prejudicing the [d]efendant, as by inviting the jury to draw conclusions about her guilt based on her alleged past misconduct." (citing *United States v. Sterling*, 738 F.3d 228, 238 (11th Cir. 2013))).

**C. The Second Category**

The Defendant raises a due process challenge to the October 4, 2023 photographic lineup identification by the Palmera Cargo Express employee. (Dkt. 60 at 8–10.) According to the Defendant, the procedures for obtaining the identification were unduly suggestive because the lineup was administered by an agent who knew that the Defendant was the target of the investigation, because "the other five photographs of potential suspects did not even slightly mirror [the Defendant] in skin color, hair type, weight, or facial features," and because "[s]omeone who is very minimally familiar with [the Defendant] would have been able to identify him based on the photo[graphic] array presented." (*Id.*) The Government disputes that the

procedures were unduly suggestive and contends that in any event, the identification was reliable. (Dkt. 61 at 12–13.)

The Eleventh Circuit requires courts to use "a two-step analysis in assessing the constitutionality of . . . an out-of-court identification" for admissibility purposes. *United States v. Diaz*, 248 F.3d 1065, 1102 (11th Cir. 2001). A court first determines whether the "identification procedure was unduly suggestive." *Id.* If the court concludes that the identification procedure was unduly suggestive, the court then "consider[s] whether, under the totality of the circumstances, the identification was nonetheless reliable." *Id.* "Factors to be considered in determining whether the identification was reliable include . . . (1) opportunity to view[,] (2) degree of attention[,] (3) accuracy of the description[,] (4) level of certainty[,] and (5) length of time between the crime and the identification." *Id.*; *accord United States v. Daniels*, 97 F.4th 800, 809 (11th Cir. 2024) ("Whether the identification was reliable under the totality of the circumstances depends on (1) the witness's opportunity to view the accused[,] (2) the witness's degree of attention[,] (3) the accuracy of the witness's description[,] (4) the witness's level of certainty[,] and (5) the length of time between the crime and the identification.").

The Government has attached the photographic array to its response to the motion in limine. (*See* Dkt. 61-1.) Based on the array, the court disagrees with the Defendant's assertion that "the other five photographs of potential suspects did not even slightly mirror [the Defendant] in skin color, hair type, weight, or facial features." (*See* Dkt. 60 at 9.) Overall, the array depicts six individuals sharing approximately the

same skin color, weight, facial features, age, and other identifying characteristics. (*See* Dkt. 61-1.) As the Government acknowledges, the Defendant's photograph has a lighter background than other photographs in the array. (*See* Dkt. 61 at 12 ("Although the background of the [D]efendant's picture is lighter than the others', the other pictures also have varying background hues, and all appear to be driver's license photographs.").) However, this difference, in and of itself, does not render the identification procedures unduly suggestive. *See United States v. Gay*, 423 F. App'x 873, 877 (11th Cir. 2011) ("In this case, the district court did not clearly err in finding that the pretrial identification procedure was not impermissibly suggestive. [The defendant] alleges that his photo[graph]'s background and his complexion are significantly darker than the other pictures in the photo[graphic] array. He also notes that whereas he was wearing an open collared [V]-neck shirt, four of the other individuals wore [T]-shirts, and the fifth had on a polo, [V]-neck, open[-]collared shirt. The district court's finding that these differences were insignificant, and did not affect the suggestiveness of the procedure, was not clearly erroneous."); *United States v. Knight*, 382 F. App'x 905, 907 (11th Cir. 2010) ("[I]n this case, the photograph array consisted of six mug-shot photographs of African-American males, all of whom appeared to be of similar age and build. Although [the defendant] was of a lighter complexion than four of the other individuals in the array and the background lighting in his photograph was slightly different from some of the other photographs, neither of these differences were stark enough so as to be unduly suggestive." (citing *Marsden v. Moore*, 847 F.2d 1536, 1545 (11th Cir. 1988), and *O'Brien v. Wainwright*, 738 F.2d

1139, 1140–41 (11th Cir. 1984))); *United States v. Michael*, 729 F. Supp. 95, 96 (S.D. Fla. 1989) (noting both the defendant's argument that a photographic identification was unduly suggestive and supporting expert testimony that the defendant's photograph was "more likely to be identified than" the others "because the [d]efendant's picture [wa]s less glossy, ha[d] a darker background[,] and contain[ed] scratches on" the photograph, but nonetheless, finding no due process violation when "review of the exhibit reveal[ed] a well-balanced photo[graphic] display"). As a result, the court concludes that the identification procedures were not unduly suggestive and that the photographic lineup identification is admissible at trial. *See United States v. Smith*, 148 F. App'x 867, 874 (11th Cir. 2005) ("A lineup is not unduly suggestive merely because the defendant's photograph can be distinguished from the others.").

Even if the procedures were suggestive, the factors for consideration, viewed in the totality, confirm the identification's reliability. *See Daniels*, 97 F.4th at 809; *Diaz*, 248 F.3d at 1102. The Government anticipates that testimony will establish the Palmera Cargo Express employee's multiple opportunities to view the Defendant with attention as well as the employee's high level of certainty regarding the identification. (*See* Dkt. 61 at 13 ("[The employee] had numerous prior opportunities to view and interact with the [D]efendant as a repeat customer and immediately selected the [D]efendant's photograph without hesitation prior to any discussion about the [D]efendant's appearance or physical characteristics.").) The anticipated evidence supporting the identification's reliability provides another basis for denying the Defendant's motion as to the second category of challenged evidence. *See United States*

*v. Lisbon*, No. 1:10-CR-251-10-TWT/AJB, 2012 WL 1068618, at *6, 2012 U.S. Dist. LEXIS 43934, at *16–17 (N.D. Ga. Feb. 26, 2012) (rejecting the defendant's due process challenge because the identifying witness "had an opportunity to view" the defendant with a sufficient degree of attention "based on their multiple . . . transactions together" and because the witness "was certain in identifying [the d]efendant"), *report and recommendation adopted by* 2012 WL 1068590, at *1, 2012 U.S. Dist. LEXIS 43649, at *2 (N.D. Ga. Mar. 29, 2012); *see also United States v. Iyamu*, No. 1:08-CR-206-ODE, 2009 WL 10690659, at *6, 2009 U.S. Dist. LEXIS 148229, at *16 (N.D. Ga. Apr. 24, 2009) (indicating that immediately identifying a defendant in a photographic lineup demonstrates a high level of certainty for the identification). The court also notes that "when no improper law enforcement activity is involved, exclusion of an eyewitness identification is unnecessary," *United States v. Elliot*, 732 F.3d 1307, 1310 (11th Cir. 2013), and that the Defendant has not established improper law enforcement activity with respect to the identification, (*see* Dkt. 60 at 8–10). Consequently, the court does not exclude the second category of evidence.

**D. The Fifth Category**

The Defendant moves to exclude photographs, videos, and testimony about the firearms, magazines, and ammunition for which he was charged on the basis that "discovery does not contain a documented, unbroken chain of custody establishing how and when these items were transferred to U[nited] S[tates] authorities, who handled them in Dominican Republic custody, or what examination or testing was conducted in the interim." (*Id.* at 16.) "[B]ecause the Dominican Republic police

force released the [firearms] into service" and the Government relies on "serial numbers recorded by Dominican Republic officials" to authenticate them, the Defendant argues, the evidence should be excluded under Rule 901. (*Id.* at 17–18.)

This rule provides: "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a); *accord United States v. Williams*, 865 F.3d 1328, 1343 (11th Cir. 2017) ("Federal Rule of Evidence 901 requires only enough evidence that a jury could have reasonably concluded that [an item of evidence] was authentic." (alteration adopted and quotation omitted)). Testimony provided by a witness with knowledge stating that "an item is what it is claimed to be" is an example of "evidence that satisfies the requirement" in the rule. Fed. R. Evid. 901(b)(1). To authenticate photographs through testimony based on personal knowledge, witnesses need only "recognize[] and identif[y] the object depicted [in a photograph] and testif[y] that the photograph fairly and correctly represents" the object. *United States v. Akel*, 337 F. App'x 843, 860 (11th Cir. 2009) (quoting *United States v. Clayton*, 643 F.2d 1071, 1074 (5th Cir. 1981)). Further, a "[c]hallenge to the chain of custody goes to the weight rather than the admissibility of the evidence." *United States v. Lopez*, 758 F.2d 1517, 1521 (11th Cir. 1985) ("[T]he adequacy of the proof relating to the chain of custody is not a proper ground to challenge the admissibility of . . . evidence."); *see United States v. Belfast*, 611 F.3d 783, 819 (11th Cir. 2010) ("[A]uthentication itself is merely the process of presenting sufficient evidence to make out a prima facie case that the proffered

evidence is what it purports to be. Once that prima facie case is established, the evidence is admitted and the ultimate question of authenticity is decided by the jury." (alteration adopted and quotation omitted)); *United States v. Caldwell*, 776 F.2d 989, 1003 (11th Cir. 1985) ("Rule 901 . . . makes the court's determination of authenticity merely a preliminary evaluation and leaves the ultimate decision on genuineness to the jury.").

In response to the Defendant's motion, the Government represents:

> [T]he chain of custody is not implicated here because the [Government] will not be seeking to authenticate and introduce physical exhibits. Rather, the [Government] intends to present eyewitness testimony from at least one Dominican Republic customs official who oversaw the seizure at the Port of Haina, was present as the firearms were removed from the refrigerator, supervised the photographing of the firearms, and personally verified the serial number of each of the [fourteen] firearms.

(Dkt. 61 at 15–16.) Because the Government intends to call a witness with personal knowledge to testify about the firearms, the court does not exclude the fifth category of challenged evidence. *See* Fed. R. Evid. 901(b)(1); *Akel*, 337 F. App'x at 860; *see also United States v. Bryant*, 334 F. App'x 259, 264 (11th Cir. 2009) ("[T]he photograph was properly authenticated by [a detective]'s testimony that when [the detective] opened [the defendant]'s cell phone, [the detective] found a picture of [the defendant] holding a gun. Accordingly, . . . the district court properly admitted the evidence."). Moreover, as the Defendant's position challenges admissibility based on chain of custody, (*see* Dkt. 60 at 16–18), it is unpersuasive, *see Lopez*, 758 F.2d at 1521. Consequently, the court denies the Defendant's motion to exclude the fifth category of evidence.

## CONCLUSION

Accordingly, the Defendant's omnibus motion in limine (Dkt. 60) is **GRANTED in part and DENIED in part** as explained herein:

1. The Government may introduce evidence and argument regarding the five uncharged prior shipments in the first category. However, the Government shall focus on proving the charges in the superseding indictment. Additionally, during the trial, the Defendant may make specific evidentiary objections as they become appropriate, and the parties may jointly propose suitable limiting instructions for the court's consideration.
2. The Government may introduce evidence and argument regarding the photographic lineup identification in the second category.
3. The Government shall not introduce evidence or argument regarding the foreign law enforcement reports or records in the third category except to refresh witnesses' recollection.
4. The Government shall not introduce evidence or argument regarding the USCIS's denial decision or related immigration consequences in the fourth category but may introduce evidence and argument regarding the Defendant's place of birth.
5. The Government may introduce evidence and argument regarding the photographs, videos, and testimony about the firearms, magazines, and ammunition in the fifth category.

6. The Government shall not use the terms "Operation Ghost Guns," "Operation Swaying Palm," and "ghost guns" in the sixth category during the trial. Furthermore, the parties shall not use inflammatory language, for example the word "alien" in the immigration context and the use of the word "illegal" as a noun, but shall follow the rules of courtroom decorum. During the trial, the Defendant may make specific objections concerning the word "trafficker," "arsenal," or "pipeline" as appropriate.

**ORDERED** in Orlando, Florida, on July 20, 2026.

JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record